. MICHAEL MAGUIRE *versus* FREDERICK M. PINGREE & *al.* JOHN McGLINCHEY *versus* THE SAME.

While, between the joint owners of a vessel, no settlement has been made of her disbursements and earnings, and no balances have been ascertained and agreed upon, one part owner cannot sustain against another an action for his proportion of the net avails, although the vessel has been lost at sea.

The usual process for such an adjustment is at equity.

Where contracts are made and are to be performed in a foreign country, their legal effect must be determined according to the laws of that country.

ASSUMPSIT. The view, taken by the Court, dispenses with any thing further than the following mere outline of these cases, although quite a mass of facts are reported, from which it seems to have been supposed the balances between the parties could be ascertained.

The ownership of the brig Friends, of the Province of New Brunswick, was divided into thirty-two shares. Each of the plaintiffs owned one share. The business was conducted in the name of the St. Stephens Navigation Company. William

T. Rose was the secretary of the company. The concern became indebted and most of the owners were desirous of selling and settling up. The plaintiffs, with the owners of two other shares, declined to join in the sale. The other $\frac{28}{32}$, equal to $\frac{7}{8}$, were sold to the defendants, Pingree & Chipman, copartners in trade; who immediately bargained to sell to four persons, one-eighth each.

The legal ownership was continued in Pingree & Chipman, who acted as ship's husband in managing the vessel, till she was lost at sea. For the purpose of meeting bills against the concern, a debt of £160, was created, upon a note given to the St. Stephens' bank, signed by William T. Rose, secretary of the company, principal, and by Pingree & Chipman and by Maguire the plaintiff, and some other of the owners.

When the brig was lost, there was an insurance on the freight of $2000, which sum was received by Pingree and Chipman; also, $4000 on the brig, of which $2000 was received also by them, and the other $2000, equally by the four persons to whom they had bargained the four-eighths as above stated. An attempt was made between Pingree & Chipman and their vendees to settle the affairs. Pingree & Chipman presented an account, in which they debited themselves, $439,59, as a balance due to the owners. The account was unsatisfactory to others, and no settlement was effected.

These two actions are brought to recover the plaintiffs' respective proportions of the amount in the defendants' hands. At the trial, evidence was introduced to show the balances, upon which evidence, cases were submitted to the Court for legal decisions.

*Granger* and *Dyer*, for plaintiffs.

*F. A. Pike,* for defendants.

FREDERIC M. PINGREE & *al. versus* MICHAEL MAGUIRE.

THE plaintiffs assert that they paid, upon the above mentioned note to St. Stephens' bank, more than their just proportion, and bring this action against one of the co-promisors

thereon, for contribution. Much evidence was introduced to show how the proportions and the balances stood.

*F. A. Pike,* for plaintiffs.

*Granger* and *Dyer* for defendant.

WELLS, J. — In the first and second actions, above named, the plaintiffs claim to recover a portion of the earnings, and of the money received from the insurers for the loss of the brig Friends. The parties were part owners of the vessel. It appears by the statement of facts, that an attempt had been made to settle the accounts between them, in relation to the vessel, but owing to a disagreement, no settlement was made.

But in such cases one part owner cannot maintain an action at law against another, although their joint interest has terminated. The ordinary remedy for an adjustment of the accounts between themselves is in a court of equity. If the parties, in the statement of facts had agreed, that there was a balance due, and how much it was, and it had appeared that a judgment rendered for it would have closed all the transactions between the part owners, and no further cause of action could grow out of them, then the actions, by our law, might have been maintained. Abbot on Shipping, 80; *Williams* v. *Henshaw*, 11 Pick. 79; S. C. 12 Pick. 378; *Chase* v. *Garvin*, 19 Maine, 211.

But by the English law, in such case, an express promise to pay the balance is necessary. *Fanning* v. *Chadwick*, 3 Pick. 420; *Foster* v. *Allanson*, 2 T. R. 480; 1 Chitty's Pl. 26, 27. And it is also the law in New York. *Halsted & al.* v. *Schmelzel*, 17 Johns. 80.

The several contracts between the parties were made and to be performed in the province of New Brunswick, and their legal effect must be determined by the laws of England. Story's Conflict of Laws, 266; *Carnegie* v. *Morrison*, 2 Metc. 397.

It is very manifest, therefore, that these actions cannot be maintained.

Calais *v.* Marshfield.

The third action, above named, is brought to recover the defendant's proportion of a note given to the St. Stephens' Bank, and signed by him, the plaintiffs and other owners of the vessel, and paid by the plaintiffs. The money was obtained upon this note for the use of the brig, and was so appropriated, and what was paid by the plaintiffs would be a charge in the general account. It may be that they are already overpaid by the earnings of the brig and the money received by them from the insurers. But whether this be so or not, can be determined by an adjustment only of the dealings of the part owners. This action stands upon the same ground as the two other actions, and must share the same fate.

*A nonsuit must be entered in each action.*